FRAZIE *v.* ORLEANS DREDGING Co.

(In Banc. May 2, 1938. Suggestion of Error Overruled June 6, 1938.)

[180 So. 816. No. 33030.]

Whittington & Brown and Engle & Laub, all of Natchez, and Watkins & Eager, of Jackson, for appellant.

Brandon & Brandon, of Natchez, for appellee.

Argued orally by **L. A. Whittington, S. B. Laub** and **W. H. Watkins, Sr.,** for appellant and by **Gerard Brandon,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

This is the third appearance of this case in this court, and it has also been to the Supreme Court of the United States. Orleans Dredging Co. v. Frazie, 173 Miss. 882, 161 So. 699; · Frazie v. Orleans Dredging Co., 296 U. S. 653, 56 S. Ct. 383, 80 L. Ed. 465; Orleans Dredging Co. v. Frazie, Miss., 173 So. 431. The present appeal is before us on a final decree dismissing the amended bill on

demurrer, the complainant, appellant here, having declined to plead further.

When the case was originally before us, it was on declaration, subsequent pleadings, and proof. Recovery of damages was sought for an alleged tort under the Seamen's Act, 46 U. S. C. A., sections 688, 713, and the averments of the declaration were that the plaintiff was engaged as a seaman on the dredge boat Cartagena, which, at the time, was at work in and upon the navigable waters of the Mississippi river. And plaintiff, in his response to defendant's notice of special matter, more specifically averred "that the place where the vessel Cartagena was engaged in work at the time of the injury to plaintiff was in what is known as Gile's Cut, which is a channel of the Mississippi River that had been open to navigation many months previously, and which channel is a part of the Mississippi River, a navigable river, and was being navigated by vessels."

When the proof came on to be heard in the original case, there was an attempt to show that the dredge boat, at the time of the alleged tort, was engaged in restoring the navigability of a previously navigable channel. The proof fell short of establishing that fact, and the more serious effort was directed to the point that the dredge boat, as it proceeded, left in its rear, as well as to its sides, a navigable channel, although there was nothing but land in front of it. We were of the opinion that the case, United Dredging Co. v. Lindberg, 5 Cir., 18 F. (2d) 453, 454, was squarely in point on that contention, and we rested our decision chiefly on that case, particularly as certiorari had been denied in it by the federal Supreme Court. 274 U. S. 759, 47 S. Ct. 769, 71 L. Ed. 1337.

In our original opinion holding that, under the record as then before us, there was no cause of action under the Seamen's Act, we directed that the case be remanded that the plaintiff might have opportunity, if desired to

proceed under the Louisiana Workmen's Compensation Act, Act No. 20 of 1914, as amended, there being enough in the record and in the evidence to introduce that subject, and less than one year having intervened between the date of the injury and that of the delivery of our said original opinion; but plaintiff lost valuable time in a futile petition for a writ of certiorari in the federal Supreme Court, and, when he came back to seek relief under the Louisiana Compensation Law, he was met with the defense that he had not sought to bring himself under that act until after the one year allowed by it had expired. We dealt with that matter in Orleans Dredging Co. v. Frazie, 173 So. 431; and we adhere to what was said therein, as qualified or explained in the concluding paragraph of the present opinion.

The larger part of the present briefs and arguments by appellant is directed to the point whether a dredge boat may be a vessel within the Seamen's Act. Appellant seems to have read the opinion in Orleans Dredging Co. v. Frazie, 173 Miss. 882, 161 So. 699, as if the court attached some sort of controlling importance to the fact that the vessel involved was a dredge boat, whereas an examination of the opinion as an entirety discloses that this was merely one among the several factual elements that were taken into consideration, every one as forming a connecting chain of facts which went to make up the complete case as presented upon the entire record.

He has argued also that there has been a shifting of opinion by the federal courts upon the narrow issue whether the location in question and the work being done at the time of the alleged tort was maritime in character. He has contended that the Lindberg Case upon which this court placed its chief reliance in its original opinion has been modified by the federal courts in subsequent opinions. We called for additional briefs upon that inquiry. Upon an examination of all the decisions which have been brought to our attention, we do

not find that there has been any substantial departure by the federal courts since the said original opinion by this court.

The later case, Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F. (2d) 670, which refers to the Lindberg Case and which contains a review of the principles disclosed by the authorities, seems to reaffirm these two propositions: (1) Where a dredge boat is cutting a channel across land which channel is intended to be navigated when finished, this is not maritime work, although as an incident thereof the dredge boat is followed, as it proceeds, by a navigable channel in its rear. (2) Where the dredge boat is deepening a navigable channel, or one which had theretofore been a navigable channel, so as to make it again actually navigable, then this work is maritime in character.

It is manifest from the amended bill of complaint that the channel upon which the dredge boat was at work at the time of this injury was not then actually navigable; that the dredge boat was then and there engaged in cutting a channel across what was then land, the surface of which was entirely above water; wherefore the remaining question available to proof is whether the channel had previously occupied the status of a navigable channel or navigable highway and whether the dredge boat was engaged in restoring its navigability.

In order that a nontidal stream or channel may have the character of navigability, so as to bring it within the admiralty jurisdiction of the nation, and hence within the purview of the Seamen's Act, it must be, or in the past must have been, capable of being used as a national public highway a considerable part of the year; and it is not sufficient that it have or had an adequate volume of water therefor only occasionally as the result of freshets or floods for brief periods of uncertain recurrence and duration. In order that navigation by flood waters or high stages of water shall bring the stream or

channel into the character of navigability within the admiralty jurisdiction, these stages of high water must occur with some frequency and at times of reasonable certainty and continue long enough to make its use of dependable commercial value, as a national public highway for that purpose. See the elaborate review of the authorities in Bissel v. Olson, 26 N. D. 60, 66, 143 N. W. 340, and the numerous cases cited in 45 C. J., p. 412, 413, including Smith v. Fonda, 64 Miss. 551, 554, 1 So. 757. Compare Economy Light & P. Co. v. United States, 256 U. S. 113, 41 S. Ct. 409, 65 L. Ed. 847, and Perry v. Haines, 191 U. S. 17, 24 S. Ct. 8, 48 L. Ed. 73.

The declaration in the case when originally before us was sufficient to bring the locus in quo within the character of navigability above described; but, as already mentioned, the proof failed to present a state of facts which measured up to the requirements; and the opinion, as we then drew it, is correct to the best of our judgment upon the record of the proof then before us. We did not deem it necessary to discuss the details of that proof, in view of the well-settled law as to what is required to constitute navigability in nontidal streams and channels. And having now gone to the trouble to restate the law on that subject, we do not deem further discussion of the said proof as necessary at this time.

The amended bill, as presently before us, again states a case within the Seamen's Act and goes more into detail of averment. The ultimate decision is one which must depend, therefore, upon the proof to be made—whether the proof upon a new trial will measure up to the requirements stated in the foregoing paragraphs upon the subject of navigability. We cannot know in advance what additional or more definite proof appellant will make or will be able to make; and, manifestly, that inquiry cannot be settled on demurrer, as has been attempted on the present record. All we can say now, or do say, is that, if the proof upon a retrial goes no further

in substantial and material respects than that on the original trial, there will be no case under the Seamen's Act.

The trial court in sustaining the demurrers presently under consideration followed literally the opinion and decision rendered by us on the second appeal, 173 So. 431, and, therefore, the chancellor is not responsible for the error in the record now before us. The bill of complaint then presented a cause of action under the Seamen's Act; and, as the trial court had so held, the decree in so far as it dealt with that question should have been affirmed, with remand. The inadvertence and error in reversing with remand was caused by the course of the argument pursued in this court. That argument did not proceed on the theory that the case was decided on the first appeal on evidence which the court did not consider sufficient to bring the cause of action within the Seamen's Act, but the contention was that the original opinion was erroneous in its context, and it was the latter contention to which the court was responding and which it rejected; and that was all that the court meant to hold or to say so far as the issues under the Seamen's Act are concerned.

Reversed and remanded.